**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

GLIMCHER COMPANY, LLC,
AND ETY VILLAGE, LLC,
        **Plaintiffs,**

                                           **CASE NO.: 2:09-cv-797**

        **v.**                                 **JUDGE GREGORY L. FROST**
                                           **Magistrate Judge Elizabeth Preston**

Deavers
THE SHOPS AT ETY VILLAGE LLC,
JORDAN RAY, ARI MARYLES, AND
TRIMENSIONS, INC.,
        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended

Complaint (Doc. # 31), Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs'

Amended Complaint (Doc. # 37), and Defendants' Reply Memorandum in Support of their

Motion to Dismiss Plaintiffs' Amended Complaint (Doc. # 38).  For the reasons set forth below,

the Court **GRANTS in part and DENIES in part** Defendants' motion.

## I.  Background

The following facts are taken from the amended complaint.  (Doc. # 28.)

Plaintiff Ety Village LLC ("Ety Village") owned real property and buildings now known

as The Shops at Ety Village ("TSEV").   Herbet Glimcher was the managing member of both Ety

Village and Plaintiff Glimcher Company LLC ("Glimcher").

On August 26, 2008, Plaintiffs Ety Village and Glimcher ("Plaintiffs") entered into an

agreement regarding Plaintiffs' intent to sell TSEV to Defendant Trimensions, Inc., a company

owned by Defendants Jordan Ray and Ari Maryles (the "Trimensions Defendants").  On that

1

same date, Plaintiff Ety Village agreed to pay the Trimensions Defendants $209,500 for consulting services.  Plaintiffs allege that despite the terms of the agreement, the Trimensions Defendants did not perform any consulting services.

On September 26, 2008, Plaintiff Ety Village entered into a contract to sell TSEV to the Trimensions Defendants for $7,300,000.  Shortly thereafter, the Trimensions Defendants indicated to Plaintiffs that they would exercise their right to terminate the contract unless Plaintiff Glimcher invested $600,000 in a new limited liability company that would be created to own TSEV.  At the time of its creation, TSEV owned no assets and had no value.  Defendants Ray and Maryles were given 20% of the ownership of TSEV and were made the managing members to procure investors in TSEV.  These two defendants were also holders of 10% of Class A interests in TSEV.

The Trimensions Defendants "continued to demand that Plaintiff Glimcher invest in Defendant TSEV."  *Id.* at ¶ 15.  The Trimensions Defendants and Defendant TSEV, made oral and written representations that, in exchange for investing $600,000, Plaintiff Glimcher would receive a 32.54% membership interest, issued in the form of Class B stocks of TSEV.  The net profits of Defendant TSEV would first be distributed to the Class B members in proportion to their Class B shares in an amount equivalent to 10% of the initial capital contributions made by the Class B members.  Once the Class B members had received 10% of their initial capital contributions, net profits would be distributed to the Class A members up to an equivalent of 2% of the initial capital contributions made by each of the initial Class B members.  If there were any remaining profits, the Class A members and Class B members were to share those profits in proportion to their respective percentage interest in TSEV.  Plaintiffs allege that the Trimensions

Defendants represented that the TSEV offering complied with Ohio and federal securities laws.

Plaintiffs claim that ultimately, the Trimensions Defendants would not close the TSEV sale transaction unless Defendant Glimcher agreed to loan TSEV $85,000, at no interest, with repayment due on December 1, 2009, which Glimcher did.

Plaintiffs' filed this action on September 11, 2009, and amended the complaint on December 8, 2009 (Doc. # 28). Plaintiff named as defendants TSEV and the Trimensions Defendants ("Defendants"). Plaintiff alleges ten claims for relief related to the sale of TSEV, all of which are the subject of Defendants' motion to dismiss.

## II. Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the United States Supreme Court clarified the plausibility standard articulated in *Twombly*:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.

*Id.,* at 1949-50.

The Court then gave direction on how to determine plausibility:

Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [*Iqbal v. Hasty,*] 490 F.3d [143] 157-158 [2d Cir. 2007]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Id.,* at 1950.

## III. Analysis

Defendants request dismissal of each of Plaintiffs' ten claims for relief.

### A. Claims 1, 2, and 7: Failure to Register Securities or Qualify for Exemption from Registration

In Plaintiffs' first, second, and seventh claims for relief, Plaintiffs allege that the TSEV membership interests that Plaintiff Glimcher purchased did not comply with state and federal registration requirements. The Securities Exchange Act of 1933 generally requires each sale of a security to be registered with the Securities and Exchange Commission ("SEC") unless otherwise exempted. *See* 15 U.S.C. § 77 *et seq.* The rules promulgated under the 1933 Act known as Regulation D contain exemptions from federal registration for private securities offerings. *See* 17 C.F.R. § 230 *et seq.* Ohio has similar registration requirements and exemption provisions. *See* Ohio Rev. Code § 1707.01 *et seq.* Plaintiffs allege that the interests in TSEV were not exempt, and Defendants therefore violated the securities laws by selling unregistered, non-exempt securities.

Plaintiffs specific contentions are that Defendants were not in compliance with the securities laws because Defendants received a commission or other remuneration in connection with the sale of interests in TSEV and because Defendants failed to make certain notice filings in connection with the sale, which prevents them from taking advantage of the exemption from

registration provided for in Regulation D.  In their motion to dismiss, Defendants argue that Plaintiffs have failed to state a claim upon which relief can be granted because Defendants did not receive a commission on the sale of securities and because insignificant deviations from the notice filings does not destroy the exemption to which they were entitled.  Defendants' arguments are not well taken.

### 1.  Commission

Defendants argue that, under their version of the facts, they did not receive a commission for the sale of securities.  Specifically, Defendants assert that the timing of the payments makes it impossible for them to have been a commission on the sale of securities and that they were, instead, a commission on a sale of property.  Defendants' argument, however, misses the mark.  At this juncture, the Court is not charged with the determining the merits of Plaintiffs' claims for relief.  Instead, the Court must decide whether the facts alleged in the amended complaint set forth a plausible claim for relief.  The way in which the Court determines this is by examining the elements a particular claim for relief entails and then ascertaining whether Plaintiffs have set forth allegations that plausibly entitle them to relief under those elements.  Simply arguing their own version of the facts, which is what Defendants have done here, is insufficient to obtain dismissal under Rule 12(b)(6).

### 2.  Notice filings

To qualify for a Regulation D exemption, a company must abide by certain prohibitions and requirements in selling its securities, and must file with the SEC a Form D, which Defendant did not file.  *See* 17 C.F.R. § 230 *et seq.*  Defendants argue that they are still entitled to an exemption from the securities registration requirements because their non-compliance with the

notice filings was "insignificant," and therefore not sufficient to prevent them from taking advantage of the exemption under Regulation D.

As Plaintiffs correctly argue, however, an insignificant deviation from the registration requirements is only one of three prerequisites necessary to maintain the exemption in the absence of filing Form D:

> (a) A failure to comply with a term, condition or requirement of § 230.504, § 230.505 or § 230.506 will not result in the loss of the exemption from the requirements of section 5 of the Act for any offer or sale to a particular individuals or entity, if the person relying on the exemption shows:
>
> (1) The failure to comply did not pertain to a term, condition, or requirement directly intended to protect that particular individual or entity; and
>
> (2) The failure to comply was insignificant with respect to the offering as a whole, provided that any failure to comply with paragraph (c) of § 230.502, paragraph (b)(2) of § 230.504, paragraphs (b)2)(i) and (ii) of §230.505 and paragraph (b)(2)(i) of § 230.506 shall be deemed to be significant to the offering as a whole; and
>
> (3) A good faith and reasonable attempt was made to comply with all applicable terms, conditions, and requirements of § 230.504, § 230.505 or § 230.506.

17 C.F.R § 230.508.

Thus, Defendants' statement that any deviation on their part was insignificant is not sufficient to excuse their failure to file a Form D, and is not grounds for dismissing Plaintiffs' first, second, or seventh claims for relief. Accordingly, the Court **DENIES** Defendants' motion to dismiss as it relates to Plaintiffs' first, second, and seventh claims for relief.

## B. Claims 3 and 8: Securities Fraud

Plaintiffs allege fraud in violation of federal and state securities laws in their third and

eighth claims for relief.  Section 10(b) of the Securities Exchange Act of 1934,[1] 15 U.S.C. §

78j(b), and Rule 10b-5,[2] 17 C.F.R. § 240.10b-5 promulgated thereunder, prohibit fraudulent

material misstatements or omissions in connection with the sale or purchase of a security.  "To

succeed on a § 10(b)/Rule 10b-5 claim, plaintiffs must establish: '(1) a misrepresentation or

omission, (2) of a material fact, (3) made with scienter, (4) justifiably relied on by plaintiffs, and

---

[1]Section 10 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means
or instrumentality of interstate commerce or of the mails, or of any facility of any
national securities exchange. . .

(b) To use or employ, in connection with the purchase or sale of any security
registered on a national securities exchange or any security not so registered, any
manipulative or deceptive device or contrivance in contravention of such rules
and regulations as the Commission may prescribe as necessary or appropriate in
the public interest or for the protection of investors.

15 U.S.C. § 78j.

[2] Rule 10b-5, prescribed by the SEC under Section 10(b) of the Exchange Act, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means
or instrumentality of interstate commerce, or of the mails or of any facility of any
national securities exchange,

(a) To employ any device, scheme, or artifice to defraud

(b) To make any untrue statement of a material fact or to omit to state a material
fact necessary in order to make the statements made, in the light of the
circumstances under which they were made, not misleading, or

(c)) To engage in any act, practice, or course of business which operates or would
operate as a fraud or deceit upon any person, in connection with the purchase or
sale of any security.

17 C.F.R. § 240.10b-5.  The scope of Rule 10b-5 is "coextensive" with the coverage of Section
10(b).  *See United States v. O'Hagan*, 521 U.S. 642, 651 (1997).

(5) proximately causing them injury.' " *Pub. Sch. Teachers Pension & Retirement Fund v. Ford Motor Co.*, 381 F.3d 563, 567 (6th Cir. 2004) (citation omitted). The elements of a securities fraud claim under Ohio law is similar and "requires proof of the following elements: (1) a representation or, where there is a duty to disclose, omission of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *Reinglass v. Morgan Stanley Dean Witter*, No. 86407, 2006 Ohio App. LEXIS 1417 at *9 (Cuyahoga Cty. March 30, 2006) (citing *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167 (1984)).

Both the federal and state fraud claims are governed by Rule 9 of the Federal Rules of Civil Procedure, which "applies to 'all averments of fraud or mistake,' (and) requires that 'the circumstances constituting fraud . . . be stated with particularity' but provides that 'malice, intent, knowledge, and other condition of mind of a person may be averred generally.' " *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). However, unlike their state law fraud claim, Plaintiffs' federal fraud claims are also governed by the pleading requirements described in the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78j(b). Title I of the PSLRA[3] imposes heightened pleading requirements in actions brought pursuant to Section

---

[3]The PSLRA in relevant part states:

(b) Requirements for securities fraud actions
(1) Misleading statements and omissions.

In any private action arising under this chapter in which the plaintiff alleges that
the defendant -

10(b) and Rule 10b-5.  Adding to the Rule 9(b) requirement that plaintiffs state their fraud allegations with particularity, the PSLRA "insists that securities fraud complaints 'specify' each misleading statement; that they set forth the facts 'on which [a] belief' that a statement is misleading was 'formed'; and that they 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.' "  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u-4(b)(1), (2)).

When evaluating a motion to dismiss pertaining to federal securities fraud, a court must first accept all allegations in the complaint as true.  *Tellabs*, 551 U.S. at 322.  Second, "courts

---

(A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

(2) Required state of mind.

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b).  Further, the PSLRA provides that if a plaintiff fails to meet the above requirements, a court may, on any defendant's motion, dismiss the complaint.  *See id.* § 78u-4(b)(3).

must consider the complaint in its entirety." *Id.* at 322-23. "The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegations, scrutinized in isolation, meet the standard." *Id.* at 323 (emphasis in original). Finally, courts "must take into account plausible opposing inferences." *Id.* A complaint could survive a motion to dismiss if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking gun genre, or even the 'most plausible of competing inferences." *Id.* at 324 (citations omitted).

Courts consider scienter the most difficult element of a Section 10(b)/Rule 10b-5 claim for a plaintiff to plead under the PSLRA; therefore, should the Court find that Plaintiffs' amended complaint does not adequately plead the scienter element, it must grant Defendants' motion to dismiss Plaintiffs' fraud claims. *See Hoffman v. Comshare, Inc. (In re Comshare Inc. Secs. Litig.)*, 183 F.3d 542, 551 (6th Cir. 1999); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004). If the Court finds that Plaintiffs have established scienter, then it will consider whether Plaintiffs have adequately pled the other elements of their *prima facie* case.

### 1. The scienter standard

Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 2 (1976). The Sixth Circuit has instructed that, a court's "task is thus to determine whether the Complaint alleges facts that, if true, would, by forming the basis for a strong inference, 'convince a reasonable person that the defendant knew a statement was false or misleading.' " *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*,

399 F.3d 651, 683 (6th Cir. 2005) (citation omitted). Therefore, courts must employ a "totality of circumstances" test in assessing whether a plaintiff has adequately alleged scienter, and among the factors that the Sixth Circuit has considered in the past are

> (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs.

*Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 917 (6th Cir. ) (quoting *City of Monroe Employees Ret. Sys.*, 399 F.3d at 683).

"[S]cienter 'is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers' which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Earthboard Sports USA, Inc.*, 481 F.3d at 917-18 (quoting *Platsis v. E.F. Hutton & Co.*, 946 F.2d 38, 40 (6th Cir. 1991)). " 'In securities fraud claims based on statements of present or historical fact - such as the claims Plaintiffs bring in this case - scienter consists of knowledge or recklessness.' " *Id.* at 918 (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d at 681).

## 2. Has scienter been sufficiently pled?

Plaintiffs maintain that the amended complaint in its entirety establishes a strong inference that Defendants committed fraud. Specifically, Plaintiffs argue that they alleged

"direct evidence" of scienter in their statements that Defendants delayed the closing of the purchase of the shopping center and "demanded" that Plaintiff Glimcher invest more money to induce Defendants to close the deal, first by demanding that Plaintiff Glimcher purchase the securities at issue in this case, and then further demanding that Glimcher make an additional loan to Defendants. (Doc. # 28 ¶¶ 15, 19, 24, 44, 48, 64.) Plaintiffs then argue that Defendants misrepresented that Plaintiff would receive Class B securities and that those securities would be properly registered or that they would qualify for exemption from registration. Plaintiffs contend that these statements are clearly misrepresentations because they could not have been sold Class B securities because they were not given a distribution at the time the Class B securities' distribution was made.

Additionally, Plaintiffs indicate that, aside from the direct evidence of scienter, an inference of scienter may be predicated upon facts showing that Defendants had both motive and opportunity to commit the fraud or facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. In this case, Plaintiffs contend, Defendants had a strong motive to commit the fraud in that they benefitted monetarily by it. Further, Defendants had the opportunity to commit the fraud because distributions to Class B members and legal compliance were completely within Defendants' control.

Defendants, however, argue that Plaintiffs allegations of direct evidence merely indicate the negotiations involved in a business transaction for the purchase of a shopping center and a breach of contract for failure to allocate profits and make a Class B securities distribution to Plaintiff Glimcher, an investment company ran by a highly sophisticated investor. And, with regard to motive and opportunity, Defendants contend that these allegations are nothing more

than the circumstances that exist in every commercial transaction.  Defendants' arguments are well taken.

"'The bare pleading of motive and opportunity does not, standing alone, constitute the pleading of a strong inference of scienter.'" *PR Diamonds*, 364 F.3d at 689 (citing *In re Comshare Inc. Secs. Litig.*, 183 F.3d at 551).  "While it is true[, however,] that motive and opportunity are not substitutes for a showing of recklessness, they can be catalysts to fraud and so sere as external markers to the required state of mind." *Id.* (citation omitted).  "'Facts regarding motive and opportunity may be relevant to pleading circumstances from which a strong inference of fraudulent scienter may be inferred, and may, on occasion, rise to the level of reckless or knowing conduct.'" *Id.* (citing *In re Comshare Inc. Secs. Litig.*, 183 F.3d at 551).

The instant action is not one of the occasions where the facts regarding motive and opportunity permit an inference of fraudulent scienter that rises to the level of reckless or knowing conduct.  Here, there is nothing more than bare allegations of motive and opportunity.  The mere fact that TSEV did not make certain payments that Plaintiff Glimcher believes it is due, are not cogent, compelling allegations that satisfy the scienter requirement.  Nor do these allegations convert a contract dispute into a fraud claim.  Plaintiffs allegations do not include insider trading at a suspicious time or in an unusual amount, divergence between internal reports and external statements on the same subject, closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information, evidence of bribery by a top company official, existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit, disregard of the most current factual information before making statements, or disclosure of accounting information in such a way that its negative

implications could only be understood by someone with a high degree of sophistication; the allegations are a considerable distance away from the types of allegations courts in this circuit have found sufficient to withstand a motion to dismiss. *See e.g., Securities and Exchange Comm'n v. George*, 426 F.3d 786, 793-94 (6th Cir. 2005) (upholding district court denial of motion to dismiss because plaintiffs had sufficiently alleged reckless scienter with respect to a sophisticated professional broker who had recklessly participated in a Ponzi scheme, lost money in that scheme, and encouraged others to participate in the scheme). Indeed, the Court finds that Plaintiffs' complaint fails to plausibly allege intent to defraud sufficient to meet the lower standard required to sustain a claim of securities fraud under Ohio law from a motion to dismiss.[4]

The Court concludes that, considering the amended complaint in its entirety and accepting all of the allegations in it as true, taking into account all plausible opposing inferences, no reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *See Tellabs*, 551 U.S. at 323. Accordingly, the Court **GRANTS** Defendants' motion to dismiss as it relates to Plaintiffs' third and eighth claims for relief.

## C. Claim 5: Breach of Fiduciary Duty

Plaintiffs allege that Defendants breached their fiduciary duty to Plaintiffs by making material misrepresentations that induced Plaintiffs into investing $600,000 in an offering that was other than it purported to be and that did not comply with state and federal securities laws. In Ohio a breach of fiduciary duty claim has three elements: (1) the existence of a duty arising

---

[4]While the parties present their arguments as if the federal and state securities fraud claims rise or fall together, Plaintiffs' state law fraud claim commands a lower bar to sufficiently plead intent.

from a fiduciary relationship, (2) a failure to observe such duty, and (3) an injury proximately resulting therefrom. *See Strock v. Pressnell*, 38 Ohio St.3d 207, 216 (1988); *McConnell v. Hunt Sports Ent.*, 132 Ohio App.3d 657, 687 (Ohio Ct. App. 1999). When a breach of fiduciary duty claim rests on averments of fraud, the allegations of fraudulent conduct must satisfy Rule 9(b). *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp.2d 722, 735 (S.D. Ohio 2009); *In re Nat'l Century Fin. Enter., Inc., Inv. Litig.*, 504 F. Supp.2d 287, 311 (S.D. Ohio 2007).

Defendants request dismissal of this claim arguing that, at the time of the alleged fraud/breach of duty the parties were dealing at arm's length and no fiduciary relationship existed. Plaintiffs, however, posit that the parties were not dealing at arms's length; instead, Defendants were acting as securities dealers and, therefore, owed a fiduciary duty to Plaintiff Glimcher because, "in Ohio, '(a) securities dealer has a fiduciary duty to his clients.' " (Doc. # 37 at 15) (citing *Friedman v. Ohio Dept. Of Ins.*, No. 82367, 2003 Ohio App. LEXIS 4585 (Cuyahoga Cty. Sept. 25, 2003), which cited *Thropp v. Bache Halsey Stuart Shields, Inc.*, 650 F.2d 817 (6th Cir. 1981)). In reply, Defendants argue that, first, they are not securities dealers. Second, Defendants contend that only brokers with discretionary authority over their clients' assets stand in a fiduciary relationship with their clients. (Doc. # 14 at 4) (citing *Sekerak v. Nat'l City Bank*, 342 F. Supp.2d 701 (N.D. Ohio 2004) ("it is generally accepted that no fiduciary duty arises between a broker and his client in relation to a non-discretionary commodity trading account").

Considering all of the arguments before it, the Court concludes that Plaintiffs have stated with particularity the circumstances constituting the alleged breach of fiduciary duty, the existence of a duty arising from an alleged fiduciary relationship, failure to observe such duty,

15

and injury proximately resulting therefrom. Whether the evidence will show that Defendants were acting as securities dealers or brokers with the potential to be considered fiduciaries to Plaintiff, whether Defendants can be properly analogized to a broker exercising non-discretionary authority over a commodity trading account, or whether Defendants were merely parties to an arm's length real estate transaction is of no moment in the Court's current analysis. Here, Plaintiffs' allegations permit the court to infer more than the mere possibility of misconduct, and therefore state a claim that is plausible on its face.

Accordingly, the Court **DENIES** Defendants' motion to dismiss as it relates to Plaintiffs' fifth claim for relief.

## D.  Claim 4: Negligent and/or Intentional Misrepresentation

In Plaintiffs' fourth claim for relief, they assert a claim that at least in part sets forth a claim for economic damages based upon negligence. Defendants argue that this claim is not a viable claim because economic damages are generally not recoverable in tort under the economic loss doctrine, which bars the recovery of purely economic losses in tort. *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) (citing *Corporex Dev. & Const. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412 (2005) ("[T]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable"). The economic loss rule applies in a tort actions when economic loss is unaccompanied by personal injury or property damage. *See Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40 (1989). Economic losses include not only diminution in value and consequential losses like lost profits, but also, investment losses. *See Pavlovich*, 435 F.3d at 569.

In opposition, Plaintiffs assert that there is an exception to the economic loss doctrine when there is a "discrete, preexisting duty in tort." (Doc. # 38 at 16) (citing *Corporex*, 106 Ohio St.3d at 415). In reply, Defendants argue that, here, there is no fiduciary duty upon which Plaintiffs can rely. Defendants' argument is not well taken.

Because the Court has determined that Plaintiffs' fiduciary duty claim survives Defendants' motion to dismiss, the Court must too conclude that Plaintiffs have sufficiently pleaded their negligent misrepresentation claim because they may be entitled to an exception to the economic loss doctrine. Accordingly, the Court **DENIES** Defendants' motion as it relates to Plaintiffs' fourth claim for relief.

**E. Claims 6 and 10: Breach of Contract**

In their sixth claim for relief, Plaintiffs assert breach of the consulting agreement against the Trimensions Defendants and in their tenth claim Plaintiffs allege breach of contract as to the distribution of the Class B securities by Defendant TSEV. To establish a breach of contract in Ohio, a party must show: (1) that a contract existed; (2) the plaintiff performed; (3) the defendant breached; and (4) the plaintiff was damaged. *Pavlovich*, 435 F.3d at 565. Defendants argue that they are entitled to dismissal of claim six because Plaintiffs "fail to articulate the provision that Trimensions allegedly breached, or the manner in which Trimensions allegedly breached the agreement," and dismissal of claim ten because Plaintiffs only set forth a conclusory recitation of the elements of the claim, which does not satisfy the pleading requirements. This Court disagrees.

With regard to the sixth claim, Plaintiffs pled that the contract, that Plaintiffs performed under the contract by paying Defendants $209,500 for consulting services, that Defendants never

provided any consulting services, and that Plaintiffs were, therefore, damaged. As to the their tenth claim, Plaintiffs pled that a contract existed, that Plaintiffs performed under the contract by paying the purchase price for the securities at issue, that Defendants breached the contract by not paying Plaintiffs the distribution to which they were entitled as Class B members of TSEV, and that Plaintiffs were damaged in that they did not receive the distribution that all other Class B members of TSEV received. The Court easily concludes that Plaintiffs have set forth claims for breach of contract that are plausible on their face.

Therefore, the Court **DENIES** Defendants' motion as it relates to Plaintiffs' sixth and tenth claims for relief.

## F. Claim 9: Unjust Enrichment

In Plaintiffs' ninth claim for relief, Plaintiffs allege unjust enrichment. Plaintiffs claim that Plaintiff Glimcher conferred a benefit on Defendants by investing $600,000 in Class B securities and paying $209,500 in purported consulting fees and that it would be unjust for Defendants to retain said benefit. To prove its unjust enrichment claim, Plaintiffs must show that it conferred a benefit on Defendants, that Defendants had knowledge of that benefit, and that Defendants' retention of that benefit would be unjust under the circumstances. *See Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1994).

Defendants argue that they are entitled to dismissal of this claim because a party cannot bring a quasi-contractual claim for unjust enrichment where a contract between the parties exists. *See Hardwood v. BPJ Invs., Co., Inc.*, 2009 WL 1362352 (Ohio App. 8 Dist.) ("The equitable doctrine of unjust enrichment does not apply when a contract actually exists"). Defendants contend that both of the payments at issue were transmitted pursuant to written contracts and that

there is no dispute as to the existence of those contracts.

In opposition, Plaintiffs maintain that the claim can survive a motion to dismiss because the contracts at issue in this action are voidable because of the fraud perpetrated upon them by Defendants. In reply, Defendants argue that even if the contract is voided, unjust enrichment is available only where a plaintiff would otherwise be left without a remedy and that here, there would be a statutory remedy available.

While Defendants are correct that a claim for unjust enrichment cannot lie where there is a contract or where there would otherwise be a remedy, Plaintiffs are correct that if the contract is voided, the unjust enrichment claim can survive. And, even though the Court has found that Plaintiffs fraud claims for relief do not survive Defendants' motion to dismiss, Plaintiffs have requested that the contracts at issue be voided based upon Defendants' failure to properly register the securities that are the subject of the contracts. Consequently, it appears that, at this juncture, Plaintiffs have stated a plausible alternative claim for relief. Accordingly, the Court **DENIES** Defendants' motion to dismiss as it relates to Plaintiffs' ninth claim for relief.

### IV. Conclusion

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. (Doc. # 31.) Specifically, the Court **GRANTS** Defendants' motion as it relates to Plaintiffs' third and eighth claims for securities fraud and **DENIES** the remainder of Defendants' motion.

**IT IS SO ORDERED.**

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**